Argued September 29; affirmed October 11; rehearing denied November 22, 1932

IN RE MITER'S ESTATE

RICHARDSON *v.* ROE ET AL.

(14 P. (2d) 996)

*Albert Abraham,* of Portland (John F. Logan and D. P. Price, both of Portland, on the brief), for appellant.

*Gustav Anderson* and *Keith Caldwell,* both of Portland (C. T. Haas, of Portland, on the brief), for respondents.

KELLY, J. Originally, upon the petition of J. H. Miner for the probate of said will, this matter was heard by Judge Knowles, sitting in the probate department of the circuit court for Multnomah county, at which time Dr. Andrew C. Smith sought to be appointed as administrator. The testimony of the attesting witnesses and of the attorney for the residuary legatee was heard, and an order was made by Judge Knowles admitting said will to probate and appointing Mr. Roe as administrator cum testamento annexo. Later, this contest was filed by Ethel M. Richardson, and heard before Judge Tazwell, one of the judges of the circuit court for Multnomah county.

Three grounds are assigned by contestant for invalidating the will in question. They are, nonobservance of the statutory method of attestation, undue influence, and testamentary incapacity.

The record is not pleasant to read, because it reflects charges of unethical conduct on the part of two of the attorneys and falsehood on the part of witnesses.

Mr. Caldwell, proponents' attorney, testified that he prepared the will in accordance with advice from said Miner, a nephew of deceased; that he also prepared three deeds for Mr. Miter to execute; that upon the afternoon of March 20, 1932, these deeds were executed by deceased; and that at that time in the presence of Mr. and Mrs. Medoff, and in the presence of Mr. Miner and said Caldwell, Mr. Miter signed the will, declared it to be his will, and at Miter's request, in the presence of Miter and the other persons just named, each of the Medoffs signed the same as an attesting witness. According to Mr. Caldwell, the deeds

just mentioned were executed by Miter because Miter had become involved in financial difficulties with other parties.

Dr. W. S. Griswold, of Seattle, testified that he is a specialist of internal medicine and diagnosis; that on April 4, 1929, he gave Mr. Miter a thorough examination, and found nothing abnormal, except some disturbance in the semicircular canals and a little trouble in his walking that sometimes follows influenza; and that he, Miter, fully understood the business which he was about.

Mr. M. J. Walsh testified that on March 6, 1929, he had a conversation with deceased and at that time deceased executed a mortgage; that deceased was sick with the flu, but was sitting up in a chair, and that he was in his usual condition mentally, a bright man, who understood the business which he was about.

Mr. S. T. Edmiston testified that he was with Mr. Miter in the forenoon of the day that Miter left with Miner, the same being March 20, 1932; that Miter told him that Miner was going to bring someone there with papers for him to execute and that except for weakness, because of sickness, Miter was not any different than at previous times when Edmiston had talked with him; and that Miter then talked as rationally as ever.

Miss Marguerite Patton testified that she was employed in general stenographic work at the First Seattle Dexter Horton National Bank and had been employed there and at the Seattle National Bank since February, 1926; that she typed a will for Mr. Miter, which will Mr. Miter dictated from a form of a will; that in this will Mr. Miter named four nieces as legatees, giving each of said nieces $1,000 and therein

made Mr. Miner the residuary legatee and devisee; that Mr. Miter and Mr. Miner were very fond of each other; that she saw Mr. Miter in the bank on March 22, 1929; that Mr. Miter was then normal in every way and understood what he was doing; that Mr. Miter told her that he had made a will before he left Portland in which he had reduced the legacies to his nieces.

It appears that on April 29, 1918, Mr. Miter executed a will wherein he gave a bequest of $4,000 to each of four nieces and made Mr. Miner his residuary legatee and devisee.

On behalf of the contestant, Mr. and Mrs. Medoff, who, as stated, were the attesting witnesses to the will in suit, testify that they did not see Mr. Miter sign said will; that they were asked to sign as witnesses, and when Mr. Medoff asked the nature of the document, Mr. Miner merely said "That paper nothing—just a piece of paper between me and my uncle." That before they signed it, they were requested to leave the room in which Mr. Miter and Mr. Miner were talking; that they heard Mr. Miter protesting against signing the paper submitted to him by Mr. Miner, and that Mr. Miter was crying. These witnesses also testify that Mr. Edmiston was not at their house on the morning of March 20, 1929, and that Mr. Caldwell was not present during the afternoon thereof. A son of Mrs. Medoff corroborated the testimony of the Medoffs in this regard. Some minor contradictions appear in the record pertaining to whether one or more pens were in use when the questioned documents were signed, whether Miter walked to the auto when he left the house of the Medoffs or was carried to the machine by Mr. Medoff, whether a fireplace was in the room then or later, and whether snow was on the ground when

Edmiston says he called upon Miter or later when the Medoffs claim that he made a call.

Concededly, the Medoffs were disappointed in not being made beneficiaries under Miter's will. They expected to receive a certain tract of land. Because they were not thus remembered, they say that they have a claim against the Miter estate. This claim is based upon alleged services for nursing, board and lodging from September, 1918, to December, 1923, during which period Mrs. Medoff testified that Mr. Miter was continuously ill, and for further services of a similar nature rendered at various intervals until Miter died. On cross-examination, Dr. Smith, testified that, during 1929, Miter was sick all the time with high blood pressure, hardening of the arteries and dilatation of the heart. At different times, the Medoffs borrowed money from Miter and gave their notes for it notwithstanding their present claim that when they thus borrowed upon their notes Miter was owing them.

There are letters in the record from Miter to Mrs. Medoff indicating that Miner had taken all of Miter's property, and that Miner was really conducting Miter's affairs. Other letters reflect full confidence in Miner on Miter's part. Moreover, some significance must attach to the fact that in each of his three wills Miter made Miner his residuary legatee.

The story told by Mrs. Medoff's son was seriously discredited by the testimony of the principal of the high school, showing that the lad was not absent from school on March 20, 1929. In rebuttal, Mr. Miner contradicted the Medoffs and corroborated Caldwell.

 We think that upon the issues presented, namely, as to the manner of the execution of the will, the testamentary capacity of deceased, and alleged undue

influence, the testimony adduced in behalf of the proponents is entitled to the greater credence. It bears upon its face the imprint of substantial, if not exact, accuracy. We arrive at this conclusion by a careful perusal of the record, and feel that we are confirmed in it by reason of the fact that both Judge Knowles of La Grande and Judge Tazwell of Portland, jurists of much experience and learning, after having had the privilege, denied to us, of seeing and hearing the witnesses, and observing their manner upon the stand, came to the same conclusion. It would unreasonably prolong this opinion to write a full review of all of the testimony, but it has all received our consideration.

There is nothing in the record which would justify the removal of Mr. Roe as administrator. This is said without the slightest intent to disparage Dr. Andrew C. Smith for whom the writer had long entertained a high regard.

The order admitting said will to probate is affirmed.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.